IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| DEMETRIUS ESPEY, | ) | |
| | ) | |
| v. | ) | No. 1:09-0090 |
| | ) | Judge Echols/Bryant |
| SPECTRUM HEALTH SYSTEMS, | ) | |
| INC., et al. | ) | |

To:     The Honorable Robert Echols, Senior Judge

### REPORT AND RECOMMENDATION

### I. Introduction

By order entered January 12, 2009 (Docket Entry No. 10), this matter was referred to the undersigned for pretrial scheduling and management.

Plaintiff Demetrius Espey, a former inmate[1] housed at the Turney Center Industrial Complex Annex (TCIX Annex) in Clifton, Tennessee, filed this *pro se* action *in forma pauperis* under 42 U.S.C. §§ 1983, 2000, against several defendants: Spectrum Health Systems, Inc. (Spectrum), a contractor with the state of Tennessee that operates the Correctional Recovery Academy at TCIX, as part of the Tennessee Department of Corrections's Parole Technical Violator Diversion Program (TVDP); Jim Tolley, the TVDP manager for Spectrum at TCIX Annex; David Westbrooks, the Deputy Warden at TCIX Annex; Angela Swanson, the Institutional Probation and Parole Officer at TCIX Annex;

---

[1] Plaintiff was paroled on April 21, 2010, and now resides in Chattanooga, Tennessee. (Docket Entry No. 65.)

1

Darrell Murphy, the Grievance Chairperson at TCIX Annex; Deana Daniel, the Inmate Jobs Coordinator at TCIX Annex; Reuben Hodge, the Tennessee Department of Correction (TDOC) Assistant Commissioner of Operations; and Janice Hoff, the TDOC Inmate Program Manager. (Docket Entry Nos. 1 & 9). Plaintiff seeks both compensatory and punitive damages, as well as declaratory relief.[2] (Id.) Defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted. (Docket Entry Nos. 39 & 54.) Plaintiff has not responded to these motions, despite obtaining an extension of time in which to do so. (Docket Entry No. 71.)

As further explained below, the undersigned recommends that defendants' motions to dismiss plaintiff's action for failure to state a claim be GRANTED in part and DENIED in part.

## II. Factual Background

Plaintiff alleges the following facts in support of his complaint:

In 2000, prior to his incarceration, plaintiff was shot in the knee and required

---

[2]Along with his original complaint and application to proceed in forma pauperis ("IFP"), plaintiff filed a separate application for a temporary restraining order and/or preliminary injunction, with supporting materials. (Docket Entry Nos. 3-5.) However, plaintiff's IFP application was returned to him with instructions to cure a deficiency noted by order of the court, and with further notation of the need to clarify which defendants plaintiff intended to sue. Plaintiff's response to the court's order was not received until January 4, 2010 (Docket Entry No. 9), after the emergent nature of the application for injunctive relief had passed. Furthermore, plaintiff's amended prayer for relief (Docket Entry No. 9 at 3) does not include any specific prayer for injunctive relief. Accordingly, it appears that plaintiff's application for injunctive relief (Docket Entry No. 3) has become moot. By separate order, the undersigned will direct the Clerk to terminate it as a pending motion on the docket.

2

surgery. (Docket Entry No. 1.) He entered TDOC in March 2009, and received a medical classification of Class B, with "orthopedic disease/disorder" restrictions. (Id.)[3] On May 29, 2009, plaintiff began the TVDP, a program which, if completed, would allow for his parole. (Id.) His medical classification at this time was listed as Class B, but with no restrictions.[4] Defendant Daniel assigned plaintiff to the community service work crew, a job which requires "heavy work," on August 24, 2009. (Id., Ex.H.) Plaintiff suffered an injury as a result and was restricted from any physical activity from August 25, 2009, until August 27, 2009, with special instructions to elevate his left foot with two pillows during the next three months. (Id., Ex.B.) Plaintiff then filed a grievance concerning his work assignment on August 28, 2009. (Id., Ex.J at 1.) Defendant Murphy concurred with the supervisor's response,[5] which stated there was no indication in plaintiff's medical records that plaintiff needed to change jobs. (Id., Ex.J at 1-3.)

---

[3] Plaintiff cites his medical records several times, but provides documentation of them only for August 25, 2009, (Docket Entry No. 1, Ex.B) and November 11, 2009 (Id., Ex.E). Plaintiff's TVDP information, completed on May 29, 2009, also contains medical information. (Id., Ex.A.) None of these records show an "orthopedic disease/disorder" restriction, but, for the purposes of this report and recommendation, the undersigned will assume that plaintiff was under such a restriction.

[4] Although neither party defines what a "Class B" medical classification is, the transcript from plaintiff's grievance hearing on September 16, 2009, indicates that a Class B prisoner will usually have a restriction attached. (Docket Entry No. 1, Ex.J at 8.) "Member: If he is class B-limited duty there has to be some restrictions. Either he has restrictions or he doesn't. Somebody has forgot to do something." (Id.) This inference is further supported in that, upon confirming plaintiff's Class B, no restrictions status, the Inmate Grievance Committee sent plaintiff to the medical facility to clarify his status and define any restrictions. (Id.)

[5] The supervisor is not involved in the present litigation.

Upon plaintiff's appeal, the Inmate Grievance Committee, at a September 16, 2009, hearing that plaintiff claims violated TDOC policy for too few members (Docket Entry No. 1),[6] recommended that plaintiff be reevaluated to determine his medical status and restrictions and that he be "held in" from the community service work crew pending this reevaluation; plaintiff saw Dr. McGhee for these purposes on September 23, 2009 (Id., Ex.J at 6). Defendant Westbrooks' response on behalf of the warden was to agree with the Grievance Committee, but he further noted that the doctor "determined [plaintiff] had no physical restrictions as he has recovered from his gun shot wound from years past." (Id.)[7] Plaintiff's final appeal resulted in defendant Hodge concurring with the previous responses on October 30, 2009. (Id., Ex.J at 9.)

Thereafter, plaintiff was apparently returned to work on the community service work crew. (Docket Entry No. 1.) He apparently required and was issued crutches on November 17, 2009, to be used for two days. (Id., Ex.E.) On December 11, 2009, defendants Tolley and Swanson notified plaintiff that he would graduate from the TVDP on December 29, 2009, as previously expected, but because he had missed twelve (12) days of the community service

---

[6] The undersigned can find no evidence of this. TDOC policy permits an annex to have only three members, Tenn. Dep't of Corr., 5.01 at 13, http://www.state.tn.us/correction/pdf/501-01.pdf, and three members were present at plaintiff's hearing (Docket Entry No. 1, Ex.J at 7).

[7] Plaintiff alleges that Dr. McGhee came to no such conclusions, and that his medical records now state that his restrictions, in addition to the "orthopedic disease/disorder," now prohibit him from "continuous strenuous activity for longer than 2 hours – for 2 weeks." (Docket Entry No. 1.) Plaintiff provides no records indicating this. However, he alleges that Dr. McGhee only examined the sites of his upper body gunshot wounds, not the wound site at his left knee, which is alleged to be the source of his orthopedic restriction. (Id. at 5.)

4

work crew, he would not be permitted "to go home on his out date of December 29, 2009." (Docket Entry No. 1.)[8] Defendants would not allow plaintiff to make up any of the missed days. (Id.) Plaintiff delivered this complaint for deliberate indifference to his serious medical needs, denial of due process, retaliation, conspiracy, and discrimination to the appropriate prison officials on December 14, 2009, and the district court clerk filed it on December 15, 2009. (Id.)

## III. Conclusions of Law

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S. Ct. 1983, 1949-50 (2009). Although Federal Rule of Civil Procedure 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). He must plead well enough so that his complaint is more than "a formulaic recitation of a cause of action's elements." Id. at 555. "The factual allegations, assumed to be true, must

---

[8] Plaintiff seems to allege that he was "held in" for filing his grievance, but then alleges that he had not missed those days because "he was called out to work to pick up litter and sweeping (sic) the grass off the side walks (sic) where [his] assigned work crew was working." (Docket Entry No. 1.) The undersigned will assume, for the purposes of this report and recommendation, that plaintiff did not miss these days of work duty entirely, but was "held in" from work on the community service work crew, but not from lighter duty work at the same site.

5

do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). Nevertheless, the court need not accept legal conclusions or unwarranted factual inferences as true, Iqbal, 129 S. Ct. at 1949-50; Moran v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of discovery for a plaintiff." Iqbal, 129 S. Ct. at 1950. While a *pro se* complaint is "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), "basic pleading essentials" must still be met. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1990).

### B. Analysis of the Motions

Plaintiff alleges violations of his civil and constitutional rights, actionable under 42 U.S.C. § 1983. (Docket Entry No. 1.) A claim under section 1983 must allege that plaintiff was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155-56 (1978). A plaintiff must satisfy both parts of this test. Christy v. Randlett, 932 F.2d 502, 504 (6th Cir. 1991). Plaintiff has sued the individual defendants in their official capacity, as employees or those in contract with the state of Tennessee who are acting under color of state law. (Docket Entry No. 1.) As a private correctional corporation under contract with the state, defendant Spectrum is deemed to be acting under color of law.

6

Strawther v. Lindamood, No. 1-07-0079, 2009 WL 223118, at *8 (M.D. Tenn. Jan. 29, 2009) (citing Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102 (6th Cir. 1991)).

Plaintiff also seeks a remedy under 42 U.S.C. § 2000. (Docket Entry No. 1.) However, the series of statutes within this subchapter of Title 42, chapter 21, are denominated alphabetically by lower case letters (e.g., §§ 2000a, 2000b, 2000c...); there is no § 2000 of Title 42, U.S. Code. Plaintiff's claims will therefore be addressed under section 1983 alone.

### 1. Supervisory Liabilty under § 1983

Defendants Spectrum, Westbrooks, Murphy, Hodge, and Hoff first move to dismiss on grounds that plaintiff has failed to allege their direct involvement in the events described in the complaint. (Docket Entry No. 39 & 54.) Plaintiff's complaint suggests he is proceeding against several of the defendants under the doctrine of *respondeat superior* liability, even though he does not specifically invoke it. (Docket Entry No. 1.) His claims against Spectrum allege that Spectrum "has a custom and practice of violating prisoners['] constitutional rights through its agent, and contractors by acquiescing [to] their subordinates['] constitutional wrongful acts" and that Spectrum "cover[s] up and fail[s] to supervise and properly train their agents." (Id.) Moreover, he claims that defendants Westbrooks, Murphy, Hodge and Hoff acted as a "rubber stamp" for the decisions of their subordinates, where they could have, instead, corrected their subordinates' actions. (Id.)

Liability is available under section 1983 only if there is personal involvement by the defendant in the alleged violation. Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727(6th

7

Cir. 1996). Allegations of defendants being in a supervisory position alone will not suffice, as section 1983 will not support a claim cased on a *respondeat superior* theory of liability. Id. A plaintiff must instead show that a supervisor "encouraged, directly participated, authorized, approved, or knowingly acquiesced . . ." in the violations alleged. Ingram v. Hall, No. 3:090169, 2009 WL 400126, at *4 (M.D. Tenn. Feb. 18, 2009) (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Generally, this liability is based on active unconstitutional behavior, rather than failure to act, even if the supervisor is aware of the unconstitutional behavior of his supervisees. Shehee, 199 F.3d at 300. Additionally, a defendant's mishandling of a grievance or failure to investigate a complaint is an insufficient basis for section 1983 liability. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

When a plaintiff cannot allege direct involvement in the alleged violation, he may nonetheless establish a supervor's direction responsibility for the violation by showing that the supervisor had policymaking authority, and that the offending subordinates were acting pursuant to a policy or custom established by the supervisory authority figure when they violated the plaintiff's constitutional rights. Ingram, 2009 WL 400126, at *5; see also Monell v. NY City Dep't of Social Services, 436 U.S. 658, 690-91 (6th Cir. 1996); Slade v. Wash. County Det. Ctr, No. 2:05-CV-210, 2007 WL 2227521, at *2 (E.D. Tenn. July 31, 2007).[9] A

---

[9] "Policy" is a "plan or course of action . . . to influence and determine decisions, actions, and other matters." Ingram, 2009 WL 400126, at *6 n.3 (quoting The American Heritage Dictionary 959 (2d ed. 1982)). "Custom" is defined as an "habitual practice or a course of action that characteristically is repeated under like circumstances." Id. (quoting Sims v. Mulcahy, 902 F.2d 524, 542 (7th Cir. 1990).

decision made regarding a single individual does not constitute either a policy or a custom, however. Ingram, 2009 WL 400126, at *6. Moreover, a plaintiff must show that the policy or custom was the "moving force" behind the deprivation of rights; the policy or custom must have played a part in causing the constitutional violations. Slade, 2007 WL 2227521, at *2 (quoting Kentucky. v. Graham, 473 U.S. 156, 166 (1985)).

Plaintiff here has alleged no personal involvement by defendants Murphy and Hodge, other than their failure to do more than affirm previous responses to plaintiff's grievances. (Docket Entry No. 1.)[10] Plaintiff believes both of these defendants could have corrected the actions of their subordinates. (Id.) But failure to act, especially in the course of the grievance process, will not establish section 1983 liability over these defendants. See Shehee, 199 F.3d at 300; Bellamy, 729 F.2d at 421; Docket Entry No. 1.

Plaintiff has alleged no personal involvement by defendant Hoff. (Docket Entry No. 1.) In fact, defendant Hoff is mentioned in the body of the complaint only with respect to plaintiff's conspiracy claim, and then only to allege that defendant Hoff has previously been involved in a racial discrimination case. (Id.) Plaintiff uses this prior litigation[11] to show that defendant Hoff "knew to investigate such complaints as plaintiff's." (Id.) However, defendant

---

[10] Plaintiff has alleged that Westbrooks delivered a grievance response to him, while Murphy scheduled a grievance hearing, but the undersigned fails to see how these actions are indicative of anything other than these defendants' attempts to aid plaintiff in the completion of the administrative process. (Docket Entry No. 1.)

[11] Plaintiff claims this case is Tuggle v. Reynolds, but the undersigned, without more information concerning the matter, is unable to find this case.

9

Hoff's knowledge of plaintiff's grievance and his failure to provide the response plaintiff desired are insufficient grounds to establish his liability in this case. See Shehee, 199 F.3d at 300; Docket Entry No. 1. Moreover, defendant Hoff's alleged involvement in prior litigation is irrelevant.

Plaintiff has alleged no personal involvement by defendant Spectrum; he instead alleges that Spectrum had a policy and custom of "implement[ing] rules and regulations that it knows will violate prisoners['] constitutional rights . . . ." (Docket Entry No. 1.) However, plaintiff fails to allege any facts about the nature of these rules and regulations. (Id.) Because the single alleged violation of plaintiff's rights cannot constitute a custom or policy, see Ingram, 2009 WL 400126, at *6, plaintiff fails to establish that defendant Spectrum actually had a custom or policy that was the "moving force" behind the alleged deprivation. See id.; Slade, 2007 WL 2227521, at *2; Docket Entry No. 1. He does claim that Spectrum carries out this allegedly rights-violating policy by acquiescing to its subordinates' wrongful acts. (Id.) But defendant Spectrum must have *knowingly* acquiesced in order to be liable. Ingram, 2009 WL 400126, at *4. Plaintiff alleges no instances of defendant Spectrum's knowing acquiescence in the alleged constitutional violation, and so fails to state a claim against defendant Spectrum arising from any wrongful acts of its employees. See Chapman v. City of Detroit, 808 F.2d 459, 456 (6th Cir. 1986); Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985) ("A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions."); Docket Entry No. 1.

10

Lastly, with respect to defendant Westbrooks, plaintiff similarly fails to allege a viable claim of supervisory liability based on active participation in or knowing acquiescence to a subordinate's unlawful action.

2. Plaintiff's Eighth Amendment claim

Plaintiff has also claimed that defendants Westbrooks, Murphy, Daniel, Hodge, and Hoff violated his Eighth Amendment rights by being deliberately indifferent to his medical needs in assigning him to the community service work crew. (Docket Entry No. 1.) A prisoner plaintiff may succeed in showing a violation of his Eighth Amendment rights if he is able to allege that prison authorities displayed deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To meet this standard, plaintiff must allege two elements, one of which is objective and one of which is subjective. Farmer, 511 U.S. 825, 826 (1994). The objective component requires that the plaintiff's injury be "sufficiently serious." Hudson v. McMillian, 503 U.S. 1, 8-9 (1992); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). More than minimal harm is needed to satisfy this element. Slade, 2007 WL 2227521, at *5. The subjective component requires the defendant to have acted with deliberate indifference to the inmate's health or safety. Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); Hunt, 974 F.2d at 735. Thus, the defendant must have acted knowingly or intentionally. Harris v. Westbrooks, No. 1:07-CV-00018, 2007 WL 1047594, at *5 (M.D. Tenn. Apr. 4, 2007). Deliberate indifference constitutes "unnecessary and wanton infliction of pain," which is more than mere, or even gross, negligence. Farmer, 511 U.S. at 835-36

11

(1994); Estelle, 429 U.S. at 104. A plaintiff must prove that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the defendant actually drew the correct inference. McKinney v. Compton, 888 F. Supp. 75, 77 (W.D. Tenn. 1995) (quoting Farmer, 511 U.S. at 837).

Deliberate indifference is not met when a defendant, relying on a plaintiff's medical records produced by a physician, has no evidence of work restrictions with which to defer. Knight v. Wiseman, 590 F.3d 458, 465 (7th Cir. 2009) (affirming the presumption that non-medical prison officials are entitled to rely upon the records of a physician); Silas v. McGinnis, No. 01-1137, 2001 WL 1450717, at *1 (6th Cir. Oct. 31, 2001) (holding that prison officials who had no objective medical evidence that the plaintiff could not work his assigned job were not deliberately indifferent).

As stated above, plaintiff has not alleged the personal involvement of defendants Murphy, Hodge, and Hoff (Docket Entry No. 1), and they cannot be held liable under section 1983 for either their participation in the grievance process or their failure to act to correct the constitutional violations wrought by their subordinates. See Shehee, 199 F.3d at 300; Bellamy 729 F.2d at 421. However, for purposes of plaintiff's deliberate indifference claim, defendant Westbrooks became personally involved with his response to plaintiff's grievance appeal in which he stated that plaintiff had no injury remaining from his nine-year-old wound based on the medical opinion of Dr. McGhee (Docket Entry No. 1, Ex.J at 6.), when Dr. McGhee is alleged to have made no such finding, nor even to have examined plaintiff's

12

lower body. Although he provides no record in support, plaintiff alleges that a physician did significantly restrict his physical activity, and viewing the facts in the light most favorable to the plaintiff, Ashcroft, 129 S. Ct. at 1949, the undersigned will accept this as true (Docket Entry No. 1).

In the prior case against Westbrooks to which defendants analogize, Harris v. Westbrooks, No. 1:07:0018, 2007 WL 1047594 (M.D. Tenn. Apr. 4, 2007), Westbrooks' actions in removing the inmate's medical restrictions so as to keep him on the community service work detail were not sufficiently alleged to be "wanton," nor could it be inferred that he was on notice of the inmate's reentered medical restrictions from the inmate's grievance filing, since that filing followed the injury to the inmate.

In the instant case however, in light of plaintiff's grievance, his typed statement to the Grievance Committee, and his allegations of defendant Westbrooks' misrepresentation that plaintiff had passed a full physical with no assessed restrictions, when Dr. McGhee allegedly failed to even examine the troublesome knee, the complaint is sufficient to state a claim that defendant Westbrooks knew of and wantonly disregarded a substantial risk of serious harm to plaintiff when he noted that the Committee's concerns had been addressed, and essentially cleared the way for plaintiff to be placed back on his heavy work detail.

Plaintiff has not met the deliberate indifference standard with respect to defendant Daniel. He alleges that she was deliberately indifferent to his serious medical needs when she gave him his original assignment to the community service work crew. (Docket Entry No. 1.)

13

However, the community service work crew information sheet plaintiff provides does not state that medical Class B prisoners are unable to perform this job (Id., Ex. H), and the last medical record before Daniel's assignment of him appears to state that he otherwise had no restriction. (Id., Ex.A). Defendant Daniel, having no medical training that is reflected in the record, is entitled to rely on plaintiff's medical records, without facing liability for deliberate indifference to a serious medical need. See Knight, 590 F.3d at 465; Docket Entry No. 1. Relying on such to inform her of plaintiff's medical needs, defendant Daniel could not have acted with the deliberate indifference necessary for plaintiff to state his claim, see Silas, 2001 WL 1450717, at *1.

### 3. Plaintiff's Retaliation Claim

Plaintiff also claims defendants retaliated against him for filing a grievance when they rescinded his upcoming parole release. (Docket Entry No. 1.) In particular, it is the actions of defendants Tolley and Swanson which are alleged to have resulted in plaintiff's ineligibility on his scheduled parole date. (Id.) A retaliation claim requires a plaintiff to establish that "(1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two – that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The plaintiff has the burden of proof on all elements, and conclusory allegations of retaliation without "concrete and relevant

14

particulars" will not suffice. Murray v. Unknown Evert, No. 03-1411, 2003 WL 22976618, at *2 (6th Cir. Dec. 8, 2003) (quoting Salstrom v. Sumner, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992)).

Plaintiff here has failed to state a sufficient retaliation claim under section 1983, inasmuch as he has failed to allege facts in support of the causation requirement. The first two elements of a retaliation claim are adequately alleged, since the filing of a grievance is clearly protected conduct, Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000), and a sufficiently adverse action appears to have been alleged. However, the complaint is utterly devoid of factual allegations establishing plaintiff's grievance filing and resolution as among the motivating factors for the actions of defendants Tolley and Swanson (see Docket Entry No. 1), and plaintiff's retaliation claim should therefore be dismissed.

### 4. Plaintiff's Discrimination Claim

While the allegation against defendants Tolley and Swanson are not sufficient to support a retaliation claim, the same cannot be said of these defendants' alleged racial and religious discrimination. To succeed on a discrimination claim under the Fourteenth Amendment's Equal Protection Clause, a plaintiff must allege facts that show or imply that purposeful action was taken against him because of his race, religion, or other protected classification, Nettles v. Little, No. 3:08mc0155, 2008 WL 2845043, at *2 (M.D. Tenn. July 22, 2008), and that such action had a "discriminatory effect" on him. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). However, the mere fact that another inmate occasionally received

15

favorable treatment "does not elevate [a] non-cognizable claim into a matter of constitutional concern." Aaron v. Cagle, No. 05-1059-T/An, 2006 WL 1277872, at *6 (W.D. Tenn. May 7, 2006). Specific factual allegations plausibly showing purposeful discrimination are necessary, or the claim is subject to dismissal. Iqbal, 129 S. Ct. 1951-52.

In this case, plaintiff specifically alleges the following acts of discrimination against defendants Tolley and Swanson:

> Defendants Tolley and Swanson summoned plaintiff to the visitation area when he came in from his assignment on the community service work crew line #10 and told him that he would graduate the Parole Technical Violator Diversion Program December 11, 2009 but he would not be permitted to go home on his out date of December 29, 2009 because he had missed twelve days of working on the community service work crew line when he was held in for filing the above mentioned inmate grievance. . . .
>
> Defendants Tolley and Swanson stated that because of the holidays coming up plaintiff did not have enough time to make up the missed days. These white non-Muslim defendants have allowed other white non-Muslim prisoners to make up legitimate days missed working by allowing them to work on weekends in the kitchen or as commercial cleaners.

(Docket Entry No. 1.) The undersigned finds these allegations sufficient to state a claim for class-based discrimination in violation of plaintiff's Fourteenth Amendment rights.

### 5. Plaintiff's Due Process Claim

Next, plaintiff claims defendants deprived him of due process by not having enough members at his grievance hearing and by rescinding his parole release. (Docket Entry No. 1.) "Courts review procedural due process claims in two steps. First, it must be determined whether there exists a liberty or a property interest with which the state has interfered.

16

Second, the court must analyze the procedures available to the plaintiff to determine whether they were constitutionally sufficient." Miller v. Haines, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998). There is no constitutionally protected right to a grievance procedure. Id. The grievance procedure is a bureaucratic procedure, violations of which are not subject to redress under section 1983. Williams, 2010 WL 605285, at *4. Additionally, there is no constitutionally protected right to parole. Berry v. Traughber, 48 Fed. Appx. 483, 484-85 (6th Cir. Aug. 14, 2002) ("Berry has neither an inherent constitutional right to parole nor a protected liberty interest created by mandatory state parole laws."); Young v. Tenn. Bd. Of Probation and Paroles, No. 07-2327-B/P, 2007 WL 1574267, at *3 (W.D. Tenn. May 29. 2007); see also Tenn. Code Ann. § 40-35-503(b).

Because plaintiff here has no liberty interest in either grievance procedures, see Millver v. Haines, 1998 WL 476247, at *1, or parole releases, see Berry, 48 Fed. Appx. at 484-85, plaintiff has failed to state a claim of deprivation of due process rights (See Docket Entry No. 1).

      6. Plaintiff's Conspiracy Claim

Finally, plaintiff claims defendants conspired to deprive him of his constitutional rights. (Docket Entry No. 1.) Conspiracy claims must be plead with specificity; vague, conclusory allegations without any factual basis are insufficient to state a claim. Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

In this case, plaintiff has not alleged the specifics necessary to state a conspiracy

17

claim, but has merely plead the sum of his claims against separate groups of defendants as a broad "conspiracy to violate plaintiff's rights" in one catch-all paragraph of his complaint. (Docket Entry No. 1). The undersigned thus concludes that this conspiracy claim is subject to dismissal.

## VI. Recommendation

In light of the foregoing, the Magistrate Judge recommends that the defendants' motions to dismiss plaintiff's complaint for failure to state a claim (Docket Entry Nos. 39 & 54) be **GRANTED** in part and **DENIED** in part. It is recommended that the motions be granted to the extent that plaintiff's claims against defendants Spectrum, Murphy, Daniel, Hodge, and Hoff should be dismissed, as should plaintiff's conspiracy, retaliation, and due process claims. It is recommended that the motions be denied to the extent that plaintiff should be allowed to proceed on his Eighth Amendment claim of deliberate indifference against defendant Westbrooks, as well as on his Fourteenth Amendment claim of discrimination against defendants Tolley and Swanson.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 575 U.S. 140 (1985);

18

Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 12th day of July, 2010.

        s/ John S. Bryant
        JOHN S. BRYANT
        UNITED STATES MAGISTRATE JUDGE