UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DEMETRIUS ESPEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:09-0090 |
| | ) Judge Trauger |
| **SPECTRUM HEALTH SYSTEMS,** | ) |
| **INC.,** *et al.* | ) |

## MEMORANDUM and ORDER

This is a *pro se* civil rights action brought by plaintiff Demetrius Espey, a former inmate at the Turney Center Industrial Complex ("Turney") in Clifton, Tennessee. At Turney, Espey was enrolled in the Tennessee Department of Correction's Parole Technical Violator Diversion Program ("PTVDP"), a program that apparently, if successfully completed, leads to parole.

Espey's Complaint generally centers around allegations that, while enrolled in PTVDP, he suffered injury after being wrongly placed on a work detail in violation of his medical restrictions. In addition to seeking damages for his alleged injury, Espey claims he lost 12 days of unrecoverable community service work and, either because of those lost days and/or because he filed an unsuccessful grievance over the work assignment, his expected release date was improperly delayed. Espey raises an assortment of claims against numerous defendants, including deliberate indifference to a serious medical need, denial of due process, retaliation, conspiracy, and racial and religious discrimination.

After the defendants filed unopposed Motions to Dismiss (Docket Nos. 39 & 54), the Magistrate Judge issued a thorough Report and Recommendation ("R & R") (Docket No. 75), in which he recommends that the motions be granted in part and denied in part. Specifically, he recommends that Espey's conspiracy, due process, and retaliation claims be dismissed, as well as all claims against

1

defendants Spectrum Health Systems, Inc. ("Spectrum"), Darrell Murphy, Deana Daniel, Reuben Hodge, and Janice Hoff. The Magistrate Judge recommends denial of the Motions to Dismiss to the extent Espey asserts that defendant David Westbrooks was deliberately indifferent to Espey's serious medical needs in violation of the Eighth Amendment, and insofar as Espey alleges defendants Jim Tolley and Angela Swanson discriminated against him in violation of the Fourteenth Amendment.

Espey has filed timely specific objections (Docket No. 80) to certain portions of the R & R. The defendants have filed responses to those objections (Docket Nos. 81 & 84), in which they argue that Espey's objections should be overruled and the R & R adopted in its entirety.

Because the R & R relates to a dispositive matter, this court conducts a *de novo* review of the objections and may accept, reject, or modify the recommendations made by the Magistrate Judge. Fed. R. Civ. P. 72(b)(3). Having undertaken that review, the court determines that, as to those portions to which no objections have been made, the R & R will be accepted, because the Magistrate Judge properly applied the law to the allegations set forth in the Complaint.

Turning to the objections, Espey preliminarily argues that he "was unable to provide documentary evidence to support his claims to the Court because Defendants failed to respon[d] to his discovery request" before they received a stay of discovery. (Docket No. 80 at 1). Relatedly, Espey argues that the stay should have been lifted so that he could respond to the Motions to Dismiss with supporting proof of his claims.

At the request of the defendants, the Magistrate Judge issued an Order (Docket No. 71) staying discovery until resolution of the Motions to Dismiss. This was entirely proper since, as the Magistrate Judge observed, the Motions to Dismiss raise legal claims, i.e., the sufficiency of the Complaint, and defendants should not be burdened with responding to discovery during the pendency of those motions. Whether Espey thinks discovery might help prove his claims is irrelevant because the court's

2

concern at this juncture is whether the Complaint, as written, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting, Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1955 (2009)).

Espey next argues that, while he set forth claims in his Complaint under 42 U.S.C. § 2000, his intention was to sue under 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and he should be granted leave to amend his Complaint to assert that claim. A motion to amend the Complaint was not presented to the Magistrate Judge. Rather, because there is no 42 U.S.C. § 2000 *per se*, the Magistrate Judge addressed Espey's claims "under section 1983 alone." (Docket No. 75 at 7). Regardless, for the reasons explained below, Espey cannot pursue a claim under 42 U.S.C. § 2000cc and, therefore, any amendment to more clearly specify such a claim would be futile.

In his Complaint, Espey seeks injunctive relief as well as compensatory and punitive damages. However, because the record reflects that Espey was paroled and is no longer incarcerated at Turney (Docket No. 65), he is not entitled to injunctive relief under RLUIPA. See, Cardinal v. Metrish, 564 F.3d 794, 798-99 (6th Cir. 2009)(transfer to another facility renders RLUIPA claim moot). Further, even though states that accept federal funds are required to provide "appropriate relief" to prisoners who suffer RLUIPA violations, the "Eleventh Amendment bars a claim for monetary relief" under RLUIPA, id. at 801, and, most certainly, punitive damages. See, Sossamon v. Lonestar State of Texas, 560 F.3d 316, 331 n.51 (5th Cir. 2009)(determination that compensatory damages are not available under RLUIPA "only strengthens the conclusion" that punitive damages are unavailable under RLUIPA). While Espey also brings claims against Spectrum, a non-governmental corporation, RLUIPA itself provides that "appropriate relief" may only be had "against a government," 42 U.S.C. § 2000cc-2(a), and thus any RLUIPA claim against Spectrum would also be subject to dismissal.

3

Espey next objects to the recommended dismissal of his deliberate indifference claim against Daniel. Daniel was the Inmate Jobs Coordinator at Turney, and Espey alleges that she was the one who placed him into the community service work crew job that led to his injury and that she did so, despite knowing he had a "Class B" medical status.

In recommending dismissal, the Magistrate Judge observed that the job description for the position does not indicate that "Class B" medical status prisoners could not perform the community service work crew job and that the last "medical record" before the assignment "appears to state" that Espey has no medical restrictions, apart from being in "Class B" medical status. (Docket No. 75 at 14). Because of that and because the record does not suggest Daniel has any medical training, the Magistrate Judge recommends that the deliberate indifference claim against her be dismissed.

In the court's view, dismissal of the deliberate indifference claim against Daniel at this time would be premature. A deliberate indifference claim has both an objective and a subjective component. "In order to satisfy the objective component, the prisoner must show that the medical need is 'sufficiently serious.'" Scott v. Ambani, 577 F.3d 642, 648 (6th Cir. 2009)(citation omitted). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). In short, "[d]eliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state 'official knows of and disregards an excessive risk to [the victim's] health or safety.'" Ewolski v. City of Brunswick, 287 F.3d 492, 513 (6th Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The job description that the Magistrate Judge references is attached to Espey's Complaint. That description does not appear to address medical restrictions at all, but indicates that a person working

4

as a community service worker could expect "heavy work" and "lifting 100-lbs. maximum with frequent lifting and/or carrying of objects weighing up to 50 lbs." (Docket No. 1, Ex. H). The "medical record" is also attached as an exhibit to Espey's Complaint and is titled "Individual Program Plan." (Id. Ex. A). While a "ϕ" is placed next to the "Medications/Restrictions" line on the form, the immediately preceding "Medical Evaluation" line indicates that Espey is "Class B Medical."

What "Class B Medical" means is a mystery at this time because, as the Magistrate Judge noted, the parties do not define it. The minutes from Espey's grievance hearing suggest that the designation "Class B" means that the inmate has some medical restriction(s). Without knowing what "Class B" status entails, or whether that designation alone should have prompted Daniel to question whether Espey could be assigned to work that potentially required lifting 100 pounds and the frequent lifting of 50 pounds, the court cannot say, as a matter of law, that Daniel did not deliberately ignore a substantial risk that Espey would be injured.

This conclusion is also necessary because the court simply does not know what actually was before Daniel when she made the placement decision. According to Espey, upon reentering prison in March 2009, he was given "Class B" medical status, along with an "orthopedic disease/disorder" restriction because he had metal screws in his left knee. He also alleges Daniel "was notified by medical officials of [his] Class B medical status and his restrictions all were well documented in his medical file [.]" (Docket No. 1 at 3). Since Espey's Complaint can be read as alleging that Daniel should have been aware of Espey's "orthopedic" restrictions, the court cannot conclude, as a matter of law or fact, that Daniel had no knowledge of Espey's actual medical problems when she assigned him to the job of community service worker.

Finally, Espey objects to the dismissal of his retaliation claim. In his objections, he claims that all defendants, except Spectrum, Hoff and Hodge, retaliated against him because he filed a grievance

5

and states that, were he allowed to conduct discovery and amend his Complaint, "he would have alleged that the disciplinary Class A infraction that he received for 'failure to participate[']  would have shown the devious and deep actions of the collective defendants including Murphy, Daniel[], Westbrooks, Tolley and others."  (Docket No. 80 at 2).

Obviously, in making his recommendations, the Magistrate Judge was not in a position to guess Espey's intentions.  In fact, Espey did not respond to the Motions to Dismiss, despite being given two extensions of time within which to do so.  (Docket Nos. 59 & 71).

Instead, the Magistrate Judge properly focused on the Complaint and, fairly read, the Complaint alleges that Tolley, the PTVDP manager, and Swanson, Turney's Institutional Probation and Parole Officer, wrongly determined that Espey missed 12 days of community service work and that they did so in retaliation for Espey's pursuit of his grievance over the work assignment that led to his injury.  The Complaint also alleges that those two defendants would not allow Espey to make up any work days – even though they allowed "white non-Muslim prisoners" to make up missed days (Docket No. 1, ¶¶20-23) – and this resulted in Espey's not being released when he should have been.

The Magistrate Judge recognized that, to prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish that "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).  The Magistrate Judge concluded that, while Espey could establish the first two elements, he could not establish the third because "the complaint is utterly devoid of factual allegations establishing plaintiff's grievance filing and resolution as among the motivating factors for the actions of defendants Tolley and Swanson[.]" (Docket No. 75 at 15).

6

However, "[a] plaintiff can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendants could reasonably be inferred." Manning v. Bolden, 25 Fed. Appx. 269, 272 (6th Cir. 2001)(collecting cases). This is because "temporal proximity . . . is indirect evidence of causation" and can support the third element of a Section 1983 retaliation claim. Patterson v. Godward, 2010 WL 1006628 at *2 (6th Cir. 2010).

Here, the record reflects that Espey filed his grievance over the work assignment on August 31, 2009, and it wound its way through the appeals process until at least October 30, 2009, when it was reviewed by an Assistant Commissioner with the Department of Corrections. (Docket No. 1, Ex. J). Espey claims that, at some point before December 9, 2009, Tolley and Swanson informed him that he had missed twelve days of work, that he would not be allowed to make up those days, and that he would not be released on December 29, 2009, as expected. This timeframe suggests that the adverse decision followed closely on the heels of protected activity and is sufficient to raise the inference that Tolley and Swanson harbored a retaliatory animus. See, Asmo v. Keane, Inc., 471 F.3d 588, 594 (6th Cir. 2006)(in Title VII action, two month period sufficient to establish causal link); DiCarlo v. Potter, 358 F.3d 408, 421-22 (6th Cir. 2004)(three weeks between protected activity and adverse action sufficient to raise inference of retaliation in Title VII case); Nethersole v. Bulger, 287 F.3d 15, 20 (1st Cir. 2002)(in context of Rule 12(b)(6) motion, court could "neither ignore the allegation of temporal proximity, nor presume that it is a mere coincidence," and dismissal of Section 1983 retaliation claim was improper where plaintiff alleged adverse action "within weeks" of protected activity). Thus, the court will not dismiss the retaliation claim against Tolley and Swanson at this time.

Based upon the foregoing, the court rules as follows:

(1) The R & R (Docket No. 75) is hereby ACCEPTED and made the findings of fact and conclusions of law of this court, except to the extent that it recommends dismissal of Espey's

7

deliberate indifference claim against Daniel and his retaliation claims against Tolley and Swanson;

(2) Plaintiff's Objections to the R & R (Docket No. 80) are hereby OVERRULED, except to the extent Espey objects to the recommended dismissal of his deliberate indifference claim against Daniel and his retaliation claim against Tolley and Swanson; and

(3) The Motions to Dismiss filed by defendants (Docket Nos. 39 & 54) are hereby GRANTED IN PART and DENIED IN PART. Those Motions are GRANTED with respect to Espey's conspiracy and due process claims, and his claims against defendants Spectrum, Murphy, Hodge, and Hoff. Those claims and defendants are hereby DISMISSED. Defendants' Motions to Dismiss are hereby DENIED with respect to Espey's Eighth Amendment deliberate indifference claim against Westbrooks and Daniel and with respect to his Section 1983 retaliation and Fourteenth Amendment discrimination claims against Tolley and Swanson.

This case is returned to the Magistrate Judge for further handling pursuant to the original referral Order (Docket No. 10).

It is so Ordered.

Entered this 24th day of August 2010.

_____
ALETA A. TRAUGER
United States District Judge

8