**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **DEMETRIUS ESPEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:09-0090** |
| | ) | **Judge Trauger/Bryant** |
| **SPECTRUM HEALTH SYSTEM, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**TO:    The Honorable Aleta A. Trauger**

<u>**REPORT AND RECOMMENDATION**</u>

Defendant Tolley has filed a motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure (Docket Entry No. 105), to which Plaintiff responded in

opposition and filed his own motion for summary judgment as to all claims against all

defendants (Docket Entry No. 114). Defendants Daniel, Swanson, and Westbrooks then filed

their motion for summary judgment pursuant to Rule 56 (Docket Entry No. 117). Plaintiff then

filed a motion for contempt against Defendants Daniel, Swanson, and Westbrooks (Docket Entry

No. 125) for filing their motion for summary judgment after the deadline for dispositive motions.

These motions have been referred to the undersigned Magistrate Judge for a report and

recommendation. (Docket Entry Nos. 10, 87.)

For the reasons stated below, the undersigned Magistrate Judge recommends that

Plaintiff's motion for contempt be construed as a motion to strike and be denied, that Defendant

Tolley's motion for summary judgment be granted, that Plaintiff's motion for summary

judgment be denied, and that Defendant Daniel, Westbrooks, and Swanson's motion for summary judgment be granted.

## Statement of the Case

Plaintiff filed his Complaint on December 15, 2009 (Docket Entry No. 1), and was granted permission to proceed in forma pauperis (Docket Entry No. 10). Several of Plaintiff's claims were dismissed by order dated August 24, 2010, but Plaintiff was allowed to proceed on his Fourteenth Amendment discrimination claim and § 1983 retaliation claim against Defendants Tolley and Swanson, and his Eighth Amendment deliberate indifference claim against Defendant Westbrooks and Daniel. (Docket Entry No. 87 (adopting in part and overruling in part the undersigned Magistrate Judge's Report & Recommendation (Docket Entry No. 75).) This Court entered a Scheduling Order on August 30, 2010, which set a January 27, 2011, deadline for filing dispositive motions (Docket Entry No. 89), which was later extended to February 21, 2011, by order of this Court (Docket Entry Nos. 108, 112). Defendant Tolley's motion for summary judgment was filed on January 27, 2011, before the extended deadline date. (Docket Entry No. 105.) The other aforementioned dispositive motions filed by Plaintiff and Defendants Daniel, Swanson, and Westbrooks were filed after the deadline had passed. (Docket Entry Nos. 114, 117.)

Defendant Tolley contends that he is entitled to summary judgment on the Fourteenth Amendment discrimination claim and § 1983 retaliation claim against him because Plaintiff has not provided new evidence or facts to create a genuine issue of material fact for trial. (Docket Entry No. 106, Def. Tolley's Mem. Supp. Mot. at 1-2.) Plaintiff contends that he is entitled to summary judgment on all of his claims against Defendants Tolley, Daniel, Westbrooks, and Swanson. (Docket Entry No. 114, Pl.'s Mot. Summ. J. at 1.) Defendant Daniel contends that she

2

is entitled to summary judgment on the Fourteenth Amendment discrimination claim and § 1983 retaliation claim against her because Plaintiff has not provided new evidence or facts to create a genuine issue of material fact for trial. (Docket Entry No. 121, Defs.' Mem. Supp. Mot. at 1-2.) Defendants Daniel and Westbrook contend that they are entitled to summary judgment on the Eighth Amendment deliberate indifference claim against them because Plaintiff has not provided new evidence or facts to create a genuine issue of material fact for trial. (Docket Entry No. 121, Defs.' Mem. Supp. Mot. at 1-2.) Plaintiff also contends that Defendants Daniel, Westbrooks, and Swanson should be held in contempt for filing their motion for summary judgment after the deadline for dispositive motions. (Docket Entry No. 125, Pl.'s Mot. Contempt at 1.)

## Statement of Undisputed Facts

Spectrum Health Systems, Inc. ("Spectrum") is a contractor for the Tennessee Department of Correction ("TDOC") and administers the Correctional Recovery Academy ("CRA") at the Turney Center Industrial Complex Annex ("TCIX Annex"). (Docket No. 104.) The CRA is divided into two separate programs, the Technical Violator Diversion Program ("TVDP") for individuals on parole, and the time-builder program ("TCOM") for inmates. (Tolley Aff. ¶ 6.) Participants in both programs of the CRA are housed in the TCIX Annex. (Tolley Aff. ¶ 7.) Defendant Tolley is the Program Manager for Spectrum at the TCIX Annex and oversees the CRA. (Tolley Aff. ¶¶ 4, 5.) Both the TVDP and the TCOM programs are divided into three phases and each phase contains a community service component and a therapeutic component. (Tolley Aff. ¶ 8.)

The TVDP is a six- to seven-month program, but the participant must complete the program within seven months or the participant will not be eligible for completion. (Docket Entry No. 118-1, TVDP Manual at 4.) Successful completion of the TVDP within seven months

leads to an automatic re-parole. (Docket Entry No. 118-1, TVDP Manual at 4.) Failure to complete the TVDP within seven months results in a pre-parole rescission hearing. (Docket Entry No. 118-1, TVDP Manual at 4.) The TVDP consists of three phases: Phase I, Orientation; Phase II, Treatment; and Phase III, Re-Entry. (Docket Entry No. 120-6, TCIX Policy No. 513.03-1(VI)(C)(3).) Plaintiff arrived at TCIX Annex on May 29, 2009, and began the TVDP on June 1, 2009, entering Phase I. (Tolley Aff. ¶ 12; Swanson Aff. ¶ 10.) Plaintiff signed an Individual Program Plan ("IPP")[1] on May 29, 2009. Plaintiff completed Phase I of the TVDP on August 21, 2009, and was assigned to Phase II on August 24, 2009. (Tolley Aff. ¶ 14, Swanson Aff. ¶¶ 14-15.)

Defendant Deana Daniel is the Inmate Jobs Coordinator at TCIX Annex and makes job assignments based on an inmate's medical classification and restrictions, education, experience, and job availability. (Daniel Aff. ¶¶ 2-4.) Plaintiff was assigned to TVDP-Community Service and TVDP-Therapeutic Community in Phase II. (Daniel Aff. ¶ 10.) Defendant Daniel made this assignment after reviewing Plaintiff's Health Assessment and Heath Assessment Comments Detail through the Tennessee Offender Management Information System ("TOMIS") and his IPP, as she does for all inmates. (Daniel Aff. ¶¶ 6-7.) At the time of Plaintiff's assignment, his most recent health assessment in TOMIS was dated March 19, 2009, and it listed Plaintiff's

---

[1] Plaintiff certified, by signing the IPP, that:

> I have participated in the orientation for the Parole Technical Violator Diversion Program and hereby agree to abide by all rules, regulations, procedures, work assignments, and my proposed individualized program plan as outlined below. Furthermore, I fully acknowledge that failure, at any time, to actively participate in and successfully complete any part of this plan will subject me to removal from the program, which may affect the Parole Board's decision in rescinding my parole release date.

(Docket Entry No. 118-2, Individual Program Plan at 2.)

health related classification as Class B. (Docket Entry No. 119-2, Health Assessment and Health Assessment Comments Detail at 1, 4.) However, there were no restrictions listed in the Comments Detail for the March 19, 2009, health assessment. (Docket Entry No. 119-2, Health Assessment and Health Assessment Comments Detail at 4.) Plaintiff's IPP also listed him as Class B Medical, but restrictions were marked with a zero, and his work experience was listed as landscaping. (Docket Entry No. 119-3, Individual Program Plan at 1.)

On August 31, 2009, Plaintiff filed an inmate grievance following his assignment to TVDP-Community Service, complaining that he was medically restricted from performing the duties of the position. (Docket Entry No. 1, Compl. ¶ 2; Docket Entry No. 120-3, Grievance at 1-2.) Grievance Supervisor James C. Bevis responded to Plaintiff's grievance on September 2, 2009, stating that "Inmate Espey does not have any restrictions on his current Health Classification making him unable to do job. I called the clinic and he has been to see the doctor, he had two days LAN, but doctor did not give him any more. Nothing was said indicating he needed a job change…." (Docket Entry No. 120-3, Grievance at 3.) Grievance Chairperson Murphy concurred with Supervisor Bevis' response, and Plaintiff appealed the decision on September 10, 2009. (Docket Entry No. 120-3, Grievance at 1.) On September 16, 2009, an inmate grievance hearing took place, and the grievance committee recommended that Plaintiff be held in until he could be re-evaluated by medical with specification of any restrictions. (Docket Entry No. 120-3, Grievance at 4-6.)

Defendant Westbrooks met with Dr. McGhee, Plaintiff's treating physician, and Nurse Natalie McDonald on September 23, 2009, to clarify Plaintiff's restrictions on his ability to perform work program assignments. (Westbrooks Aff. ¶¶ 2, 9.) After looking at Plaintiff's March 19, 2009, health assessment, Dr. McGhee advised Defendant Westbrooks that Plaintiff

did not have any specific restrictions, which Defendant Westbrooks noted on Plaintiff's Health Classification Summary. (Westbrooks Aff. ¶ 10; Docket Entry No. 120-2, Health Classification Summary.) Defendant Westbrooks them responded to Plaintiff's appeal of the grievance, with the information gained from the conversation with Dr. McGhee, that he agreed with the grievance committee's proposed response to have Plaintiff re-evaluated and restrictions specified. (Westbrooks Aff. ¶ 14; Docket Entry No. 120-3, Grievance at 6.) Plaintiff was re-evaluated by medical as recommended by the grievance committee on September 28, 2009, and given the following restriction: "no continuous strenuous activity for extended periods of time for longer than two hours for two weeks." (Docket Entry No. 120-4, Health Classification Summary Sept. 28, 2009.)

Plaintiff completed Phase II on October 19, 2009. (Tolley Aff. ¶ 15.) Plaintiff's appeal was eventually denied on October 30, 2009. (Docket Entry No. 120-3, Grievance at 10.) Plaintiff began Phase III on October 19, 2009, and was scheduled to complete Phase III on December 11, 2009. (Tolley Aff. ¶ 16.) However, Plaintiff missed twelve days of community service due to limited activity notices and medical and dental appointments. (Docket Entry No. 118-3, Inmate Attendance; Docket Entry No. 118-4, Missed Days.) Defendant Swanson, the Tennessee Board of Probation and Parole, Institutional Parole Officer at TCIX Annex, informed Defendant Tolley of these absences in an email on November 23, 2009, and that Plaintiff would not be eligible for release unless he made up these absences. (Docket Entry No. 118-5, Email; Swanson Aff. ¶ 21.) Plaintiff's absences were discussed the next day during the M-Team[2] meeting and it was

---

[2] The undersigned has gathered from the evidence that "M-Team" stands for Multi-Disciplinary Treatment Team (Abdul al-Muhaymin Aff. ¶ 15) and is also known as the Unit Team (Docket Entry No. 1-1, Spectrum Manual at 18). According to the Spectrum Manual:

determined that Plaintiff would be offered the opportunity to transfer to Phase III of the TCOM program because he would be unable to complete the TVDP program in seven months. (Docket Entry No. 118-6, M-Team Meeting Minutes.) There is a dispute as to whether Plaintiff was actually offered the opportunity to switch from the TVDP program to the TCOM program (Tolley Aff. ¶ 29; Swanson Aff. ¶ 27; Abdul al-Muhaymin Aff. ¶ 17), but it is certain that Plaintiff was terminated from the TVDP program and was participating in TCOM (Tolley Aff. ¶ 31).

Plaintiff stopped attending the group classes as part of the therapeutic component of TCOM. (Tolley Aff. ¶ 32.) Plaintiff was then reported to the parole rescission board and a parole rescission hearing was held on February 9, 2010. (Tolley Aff. ¶ 33, Swanson Aff. ¶ 58.)

## Legal Analysis

A. <u>Plaintiff's Motion for Contempt and Defendant's Motion to Accept Late-Filed Motion for Summary Judgment</u>

In general, "a district court has broad discretion to manage its docket," including the decision to accept a tardy motion for summary judgment. <u>Hatchett v. Potluck Enters., Inc.</u>, 2010 WL 4822431, at *2 (M.D. Tenn. Nov. 19, 2010) (quoting <u>ACLU v. McCreary County</u>, 607 F.3d 439, 451 (6th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1474 (2011)). In <u>Andretti v. Borla Performance Industries, Inc.</u>, 426 F.3d 824 (6th Cir. 2005), the Sixth Circuit reviewed a district judge's denial of a Rule 12(f) motion to strike a motion for summary judgment that was filed after the deadline

---

The Unit Team is responsible for making all decisions concerning your status in the CRA. The Unit Team consists of Spectrum staff and, when applicable, TDOC staff such as teachers, mental health counselors, and any other personnel who are involved in your status and movement. The Unit Team meets weekly.

(Docket Entry No. 1-1, Spectrum Manual at 18.)

for dispositive motions. While Rule 12(f), as written, only applies to pleadings, the Sixth Circuit has determined that such "motion[s] to strike a motion" are proper and may be considered by a district court. <u>McCreary County</u>, 607 F.3d at 451; <u>Andretti</u>, 426 F.3d at 830; <u>see</u> <u>also</u> <u>Hatchett</u>, 2010 WL 4822431, at *2-3.

A district court correctly analyzes a late-filed motion for summary judgment as a request to modify a scheduling order under Rule 16(b). Fed. R. Civ. P. 16(b) (2010); <u>Andretti</u>, 426 F.3d at 830. Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). In analyzing the request to modify the scheduling order, "the primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." <u>Andretti</u>, 426 F.3d at 830 (quoting <u>Inge v. Rock Fin. Corp.</u>, 281 F.3d 613, 625 (6th Cir. 2002)). In addition to good cause, "[a] district court should also consider possible prejudice to the party opposing the modification." <u>Id</u>. In <u>Andretti</u>, the district court amended its scheduling order and set a deadline for filing dispositive motions for February 23, 2004. <u>Id</u>. at 829. The defendant, Borla, filed a motion for summary judgment on March 8, 2004, without seeking leave of the court. <u>Id</u>. at 829-30. The plaintiff, Andretti, filed a motion to strike Borla's motion for summary judgment as it was filed after the February 23 deadline for dispositive motions. <u>Id</u>. at 830. The court found good cause for the late filing because Borla did not receive compelled responses to its discovery requests from Andretti until after the deadline had passed, the court had allowed other motions to be filed late, and the motion pertained to justiciability. <u>Id</u>.; <u>Hatchett</u>, 2010 WL 4822431, at *2. Moreover, Andretti could not show that he suffered any prejudice because the motion was filed only two weeks after the deadline and the outcome of the motion would have been the same if it had been timely filed. <u>Andretti</u>, 426 F.3d at 830.

In this case, the pro se Plaintiff filed a motion for contempt, or, alternatively, a pre-trial conference, a stay of Defendants' summary judgment motion, and a show cause order against Defendants. (Docket Entry No. 125.) However, because a motion for contempt is not appropriate in this situation, Plaintiff's motion for contempt will be treated as a Rule 12(f) motion to strike Defendants' motion for summary judgment. Defendants Westbrooks, Daniel, and Swanson filed a motion for summary judgment without leave on March 4, 2011, after the February 21, 2011, deadline for dispositive motions set by the undersigned. (Docket Entry No. 117.) Plaintiff contends that Defendants acted in bad faith, supported by the fact that the undersigned had already granted Defendants two extensions of time to file any dispositive motions. (Docket Entry Nos. 108, 112; Mot. Contempt at 1.) Plaintiff also argues that he will suffer prejudice because the trial is scheduled for July 2011 and the deadline had already passed. (Mot. Contempt at 1.) Counsel for Defendants contends that the late filing was the result of a mistake in highlighting the deadline in her calendar on March 31 instead of February 21 and was unintentional and not meant to delay the matter. (Docket Entry No. 130, Resp. Opp'n at 1.)

The undersigned finds defense counsel's excuse unpersuasive. In Defendants' second motion for extension of time to file a dispositive motion, Counsel specifically requested a "brief extension of five days," "up to and including February 21, 2011," in which to file a dispositive motion. (Docket Entry No. 111.) Furthermore, there is no indication that Defendants had good cause for the late filing other than Counsel's scheduling mistake. (Resp. Opp'n at 1-2.) However, although Defendants cannot show good cause for the delay in filing, a number of other factors weigh in favor of modifying the deadline for dispositive motions to allow consideration of Defendants' motion for summary judgment. First, Plaintiff also did not file his motion for summary judgment until February 24, 2011, after the February 21, 2011, deadline for dispositive

motions. (Docket Entry No. 114.) Second, neither Plaintiff nor Defendants have shown that they will be prejudiced by the tardy motions for summary judgment. Although Plaintiff argues that trial has been scheduled for July 2011, he does not argue that the eleven-day delay in Defendants' filing affected the trial date. Similarly, Defendants do not argue that the three-day delay in Plaintiff's filing has prejudiced them in any way. (Resp. Opp'n at 2.) Third, both motions pertain to the question of whether there is any triable issue in this case.

Thus, the undersigned finds that Plaintiff's Motion for Contempt, treated as a motion to strike Defendants' motion for summary judgment, should be denied because Plaintiff will not be prejudiced by Defendants' delay, Plaintiff filed his own motion for summary judgment late without leave of the court, and Defendants' motion pertains to whether there is any need for the trial scheduled to begin on July 26, 2011. Furthermore, the undersigned finds that Defendant's Motion to Accept Late-Filed Motion for Summary Judgment, treated as a request to modify the scheduling order, should be granted to allow consideration of both Plaintiff's and Defendants' motions for summary judgment filed after February 21, 2011, and to allow the motions to be decided on the merits. In addition, Defendant Tolley's motion for summary judgment was timely filed and, accordingly, entitled to consideration by the court. (Docket Entry No. 105.) The undersigned will consider the motions for summary judgment in the order in which they were filed.

B. <u>Cross-Motions for Summary Judgment</u>

*1. Standard of Review*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011). Facts are material if, as determined by substantive law, they "might affect

the outcome of the suit." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. Furthermore, there is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." If such evidence is "merely colorable" or "is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50; <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 153 (1970); <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968). A moving party is entitled to judgment as a matter of law "against a [nonmoving] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," rather the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). The court will then determine only whether there is a genuine issue for trial, drawing all inferences in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 249; <u>Matsushita</u>, 475 U.S. at 587. In addition, a district court will liberally construe pro se pleadings and apply to those pro se pleadings a less stringent standard than that applied to pleadings drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). However, pro se plaintiffs "are not entitled to take every case to trial," <u>Pilgrim v. Littlefield</u>, 92 F.3d 413, 416 (6th Cir. 1996), and basic pleading standards must be met despite the more lenient standards. <u>Martin v. Overton</u>, 391 F.3d 710, 714 (6th Cir. 2004). Moreover, pursuant to Local Rule 56.01(g), "failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional

facts, within the time periods provided by these Rules, shall indicate that the asserted facts are not disputed for purposes of summary judgment."

### 2. *Defendant Tolley's Motion for Summary Judgment*

Defendant Tolley properly filed an Undisputed Statement of Facts along with his motion for summary judgment pursuant to Local Rule 56.01(b), to which Plaintiff has not responded. The Sixth Circuit has determined that "a district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded." Stough v. Mayville Cmty. Schs., 138 F.3d 612, 614 (6th Cir. 1998). Pursuant to Local Rule 56.01(g), the facts asserted by Defendant Tolley in his statement of facts shall be deemed admitted for purposes of the summary judgment motion, with the exception that, because Plaintiff is proceeding pro se, the court will treat Plaintiff's filings as demonstrations that the facts are disputed where they contradict Defendant Tolley's statement of facts.

Plaintiff's first claim against Defendant Tolley is for retaliation under § 1983. A retaliation claim requires a plaintiff to show that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the adverse action and the protected conduct, or the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff shoulders the burden of proof on all elements and "conclusory allegations of retaliatory motive 'with no concrete and relevant particulars' fail to raise a genuine issue of fact for trial." Murray v. Unknown Evert, 84 Fed. Appx. 553, 556 (6th Cir. Dec. 8, 2003); Henderson v. Lindamood, 2008 WL 4190016, at *15 (M.D. Tenn. Sept. 5, 2008). However, a retaliatory

motive may be established by showing "a chronology of events from which a retaliatory animus on the part of the defendants could reasonably be inferred." Manning v. Bolden, 25 Fed. Appx. 269, 272 (6th Cir. Dec. 7, 2001). Such temporal proximity can provide indirect evidence of a causal connection to satisfy the third prima facie element of the retaliation claim. Patterson v. Godward, 2010 WL 1006628, at *2 (6th Cir. Mar. 19, 2010). Nevertheless, a temporal connection must be "coupled with other indicia of retaliatory conduct" in order to create a genuine issue of material fact as to the existence of a causal connection. Little v. BP Exploration & Oil Co., 265 F.3d 357, 364 (6th Cir. 2001). A plaintiff can show the existence of "other indicia of retaliatory conduct" by providing evidence that the plaintiff has been treated differently from other similarly situated individuals. Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999). However, a court is not required to "accept unsupported, self-serving testimony as evidence sufficient to create a jury question." Brooks v. Am. Broad. Cos., 999 F.2d 167, 172 (6th Cir. 1993); Secherest v. Lear Siegler Servs., Inc., 2007 WL 1186597, at * 5 (M.D. Tenn. Apr. 16, 2007).

In this case, Defendant is entitled to summary judgment on Plaintiff's § 1983 retaliation claim because, after full discovery, Plaintiff has not shown a genuine issue of fact for trial concerning Defendant Tolley's responsibility for the adverse action, nor a causal connection between Plaintiff's termination from the TVDP program and the filing of his grievance. It is undisputed that Plaintiff engaged in protected conduct by filing a grievance with the Tennessee Department of Correction concerning his work assignment in the TVDP program. (Compl. ¶¶ 1,2; Def. Tolley's Statement of Undisputed Facts ¶ 17.) It is also undisputed that an adverse action was taken against Plaintiff when he was not allowed to complete the TVDP program to be eligible for release on December 29, 2009. (Compl. at 5, ¶ 20; Def. Tolley's Statement of

Undisputed Facts at 5-6.) However, Defendant Tolley contends that he did not cause that adverse decision to be made and did not make the determination that Plaintiff was ineligible for release on December 29, 2009. (Def. Tolley's Mem. Supp. at 7.) Plaintiff's only evidence in support of his allegation that Defendant Tolley took the adverse action against him is the broad, conclusory statement of Khalil-Ullah Abdul al-Muhaymin that Defendant Tolley "[wielded] tremendous influence and power at TCIX Annex relative to classification, job placement, and possible parole of the participants in the CRA." (Abdul al-Muhaymin Aff. ¶ 6.)

Moreover, Defendant Tolley contends that he was unaware of Plaintiff's grievance until receiving Plaintiff's complaint and, as such, could not have retaliated against him. (Def. Tolley's Mem. Supp. at 8.) Plaintiff provided the following evidence in support of his claim that Defendant Tolley knew of the grievance: (1) minutes of the grievance hearing, chaired by Corporal Darrell Murphy, who is also a member of the M-Team and weekly participant in M-Team meetings; (2) pages of the TCOM handbook which state that "everyone reports on your behavior;" and (3) minutes of the November 24, 2009, meeting of the M-Team. (Pl.'s Resp. at 1.) Plaintiff suggests that Corporal Murphy was aware of the grievance by virtue of his participation in the grievance process, was a member of the M-Team with Defendant Tolley, and discussed the grievance with Defendant Tolley at an M-Team meeting. (Pl.'s Resp. at 1.) However, the minutes from the M-Team meetings in the record do not contain any facts or statements, direct or circumstantial, to show that Corporal Murphy ever discussed Plaintiff's grievance during an M-Team meeting. (Pl.'s Mot. Summ. J., Ex. 12.) The mere fact that Defendant Tolley and Corporal Murphy were both M-Team members is insufficient to allow the reasonable inference that Defendant Tolley was notified of, and motivated to take adverse action against Plaintiff by, the fact of Plaintiff's protected grievance filing.

In summary, Plaintiff has not set forth any facts to show that there is a genuine issue of material fact for trial on his retaliation claim. Plaintiff, as the non-movant, has not established that Defendant Tolley knew of Plaintiff's grievance, and, even if the court draws the inference that Defendant Tolley knew of the grievance by virtue of his participation in M-Team meetings with Corporal Murphy, and that the temporal proximity between the grievance and the adverse action suggests retaliatory animus, Plaintiff has not established by competent proof on this summary judgment record that the adverse action taken against him was a result of Defendant Tolley's actions, nor that there were other indicia of retaliatory motive on the part of Defendant Tolley so as to create a triable issue as to whether in fact the adverse action was causally connected to the grievance filing. The undersigned Magistrate Judge finds that Defendant Tolley's motion for summary judgment should be granted as to the § 1983 retaliation claim.

Plaintiff's second claim against Defendant Tolley is for racial and religious discrimination in violation of the Fourteenth Amendment. To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, a § 1983 plaintiff must show "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990); see also Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995). The plaintiff must establish discriminatory intent or purpose, McCleskey v. Kemp, 481 U.S. 279, 292 (1987), and that discriminatory purpose must be a motivating factor in the defendant's actions, Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265-66 (1977); see Copeland, 57 F.3d 476.

In this case, Plaintiff's claim for racial and religious discrimination against Defendant Tolley cannot withstand a motion for summary judgment because the Plaintiff has not established that Defendant Tolley was the actor responsible for his termination from the TVDP

program nor that Defendant Tolley acted with discriminatory intent. As previously discussed, Plaintiff has only offered the conclusory statement of Mr. Abdul al-Muhaymin in support of his allegation that Defendant Tolley made the decision to terminate Plaintiff from the TVDP program and to not allow Plaintiff to make up missed work days. Defendant Tolley's statement of facts, which are deemed admitted where uncontested by Plaintiff, along with supporting affidavits and exhibits show that Defendant Tolley was not responsible for these decisions; rather, the Line-Jobs Supervisor made the decisions.

Furthermore, Plaintiff's only support for showing a discriminatory motive by Defendant Tolley is Mr. Abdul al-Muhaymin's conclusory statement that "I am aware of Espey attending Jumah Prayer Services every Friday and being penalized for having his time in prison extended for doing so, while non-Muslims were not penalized in any manner for attending their Worship services." While there is a genuine issue of fact as to whether Defendant Tolley knew that Plaintiff is Muslim based on Plaintiff's Affidavit (Docket Entry No. 131), that fact is not material because Plaintiff cannot show a discriminatory motive even assuming that Defendant Tolley knew Plaintiff is Muslim and that Defendant Tolley made the adverse decision. In addition, Plaintiff has not provided evidentiary support for his allegation that Defendant Tolley allowed "other white non-Muslim prisoners to make up legitimate days missed working by allowing them to work on weekends in the kitchen or as commercial cleaners." (Compl. ¶¶ 20, 21.) In fact, Mr. Abdul al-Muhaymin's affidavit claims that Defendant Tolley stated that Plaintiff would be allowed to leave on his scheduled date of release "because others had been allowed to do so by doing their community service in the kitchen or as commercial cleaner." (Khalil-Ullah Abdul al-Muhaymin Aff. ¶ 19.) Thus, Defendant Tolley is entitled to summary judgment on Plaintiff's Fourteenth Amendment discrimination claim because Plaintiff has not established that there is a

genuine issue of material fact for trial as to whether Defendant Tolley was responsible for the adverse decision, and even assuming responsibility, whether Defendant Tolley acted with discriminatory purpose.

In summary, the undersigned Magistrate Judge finds that there are no genuine issues of material fact for trial, and that, based on the facts before the undersigned, a reasonable jury could not find for the Plaintiff. The Court should therefore grant Defendant Tolley's motion for summary judgment as to both of the remaining claims against him for retaliation under § 1983 and discrimination in violation of the Fourteenth Amendment.

    *3. Plaintiff's Motion for Summary Judgment*

Plaintiff filed his motion for summary judgment against Defendants Tolley, Swanson, Daniel, and Westbrooks (Docket Entry No. 114), but did not file a statement of facts as required by Local Rule 56.01(b) or a memorandum of law in support of his motion as required by Local Rule 7.01(a). However, because Plaintiff is proceeding pro se, the undersigned will treat Plaintiff's filings, including affidavits, exhibits, and cases, as supporting documentation in considering Plaintiff's motion for summary judgment.

Plaintiff filed Defendants' discovery responses along with his motion (Docket Entry Nos. 114-1, 114-2); however, those responses do not support Plaintiff's motion for summary judgment by providing contested facts. Plaintiff also filed two unpublished cases, Funzie v. Little, 2009 WL 2243786 (M.D. Tenn. July 23, 2009), and Harris v. Westbrooks, 2007 WL 1047594 (M.D. Tenn. Apr. 4, 2007). However, both cases support Defendants because they involve past claims by inmates against many of the Defendants named in this case that were dismissed by the courts in those respective cases. These cases do not support Plaintiff's motion for summary judgment. Next, Plaintiff filed a copy of his TDOC inmate grievance and the resulting paperwork from his

hearing and appeal, a limited activity notice, receipt for medical equipment, TOMIS notice, initial assessment, and CRA discharge summary. However, these documents do not present new facts. These documents were already included in Plaintiff's original complaint and corresponding exhibits. (Docket Entry No. 1-1.) Plaintiff also filed TCIX Policy No. 505.07, but there is no indication that this exhibit supports Plaintiff's motion for summary judgment in any way.

Likewise, Plaintiff filed minutes from M-Team meetings, but the minutes from these meetings pertaining to Plaintiff do not support his motion for summary judgment. The minutes from the November 24, 2009, meeting note Defendant Swanson stating:

> [Inmate] Demetrius Espey #217695 was suppose[d] to be released by 11/30/09 but apparently has been held back because of LAN's etc. and now is not scheduled to be released until 1/04/10. This will put him over the 7 mos. limit. He will not successfully complete the program but will finish his time and it will be noted on his record that he completed phase 1, 2, and 3 but did not complete the diversion program.

(Docket Entry No. 114-12.) The minutes from the December 8, 2009, meeting note Defendant Tolley explaining that "Mr. Espey would be transferred to Mr. Jones on 12-14-2009 in order for him to complete the TCOM program on February 18, [2010]." (Docket Entry No. 114-12.) Defendant Tolley also stated that "he thought Mr. Espey had done [exemplary] work." (Docket Entry No. 114-12.) Plaintiff was mentioned in the minutes of the February 9, 2010, meeting in a statement by Defendant Westbrooks that Plaintiff "had filed a law suit against him and Spectrum for not being allowed to complete the program." (Docket Entry No. 114-12.) Defendant Westbrooks explained that Plaintiff "had an old injury from a gun shot wound and claimed he was unable to do the work side of the program" and that "[h]e was then offered to be placed in the TCOM side of the program." (Docket Entry No. 114-12.) Most importantly, Defendant

Westbrooks stated that Plaintiff "was discharged from the diversion program not only because he didn't have time to complete it but also because of behavioral problems." (Docket Entry No. 114-12.) These minutes do not assert new facts and do not support Plaintiff's motion for summary judgment.

The only item of non-cumulative evidence that is supportive of the motion for summary judgment filed by Plaintiff is the affidavit of Mr. Khalil-Ullah Abdul al-Muhaymin (Docket Entry No. 115). Pursuant to Rule 56(c)(4), affidavits "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c) (2011). However, affidavits containing "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." Alexander v. CareSource, 576 F.3d 551, 560 (6th Cir. 2009); Lewis v. Phillip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004).

Mr. Abdul al-Muhaymin's affidavit does not allege specific facts to create a genuine issue of material fact for trial, and is replete with unsupported conclusory statements. (Abdul al-Muhaymin Aff. ¶¶ 6, 8, 10, 11, 14, 15, 16, 17, 19, 21.) Furthermore, several statements are based on inadmissible hearsay. (Abdul al-Muhaymin Aff. ¶¶ 10, 19, and 20.) Also, there is no indication that Mr. Abdul al-Muhaymin has personal knowledge to make several of the statements asserted. (Abdul al-Muhaymin Aff. ¶¶ 8, 14, 16, 21.)

In summary, Plaintiff has not set forth sufficient evidence of his claims to be entitled to judgment as a matter of law. The only supporting evidence for his motion for summary judgment is the affidavit of Mr. Abdul al-Muhaymin. Even assuming the truth of Mr. Abdul al-Muhaymin's affidavit, despite its unsupported conclusory statements, Plaintiff has still not

established sufficient facts to create a genuine issue of material fact as to his claims against Defendants Tolley, Daniel, Swanson, and Westbrooks as described in this report, let alone justify summary judgment in his favor. Thus, the undersigned Magistrate Judge recommends that Plaintiff's motion for summary judgment be denied.

### 4. *Defendants Daniel, Swanson, and Westbrooks' Motion for Summary Judgment*

Defendants Daniel, Swanson, and Westbrooks properly filed a Statement of Undisputed Facts along with their motion for summary judgment pursuant to Local Rule 56.01(b), to which Plaintiff has not responded. The Sixth Circuit has determined that "a district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded." Stough,138 F.3d at 614. Thus, pursuant to Local Rule 56.01(g), the facts asserted by Defendants in their statement of facts shall be deemed admitted for purposes of the summary judgment motion. However, because Plaintiff is proceeding pro se, the court will treat Plaintiff's filings as demonstrations that the facts are disputed where they contradict Defendants' statement of facts.

The undersigned will first consider Plaintiff's claims against Defendant Swanson under the Fourteenth Amendment and § 1983. Defendant Swanson has raised an affirmative defense for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), in her motion for summary judgment. (Defs.' Mot. Summ. J. at 22-23.) Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be raised and established by the defendant. Jones v. Bock, 549 U.S. 199, 212-16 (2007); Vandiver v. Corr. Med. Servs., Inc., 326 Fed. Appx. 885, 888 (6th Cir. May 1, 2009). However, failure to plead an affirmative defense generally results in a waiver of that defense. Old Line Life

Ins. Co. v. Garcia, 418 F.3d 546, 550 (6th Cir. 2005); Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir. 1994).

In this case, Defendant Swanson did not raise her affirmative defense of failure to exhaust administrative remedies under the PLRA until filing her motion for summary judgment, after filing her motion to dismiss under Rule 12(b)(6) (Docket Entry No. 54). Plaintiff was still incarcerated when the motion to dismiss was filed and could have exhausted his claims at the TCIX after receiving notice of the affirmative defense in the motion to dismiss. Because Plaintiff has been released from TCIX and his efforts to exhaust would now be time-barred, and, with a trial set to begin on July 26, 2011, he would suffer prejudice should the court allow Defendant Swanson to assert this affirmative defense this late in the litigation. Moreover, Defendants Swanson, Westbrooks, and Daniel have never filed an answer to Plaintiff's complaint in this matter. Thus, the undersigned Magistrate Judge finds that Defendant Swanson has waived her affirmative defense and will consider the summary judgment motion on the merits.

Plaintiff's first claim against Defendant Swanson is for retaliation under § 1983. As previously discussed, a retaliation claim requires a plaintiff to show that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the adverse action and the protected conduct, or the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X, 175 F.3d at 394.

In this case, Defendant Swanson is entitled to summary judgment on Plaintiff's § 1983 retaliation claim because, after full discovery, Plaintiff has not shown a genuine issue of fact for trial concerning Defendant Swanson's responsibility for the adverse action, nor a causal connection between Plaintiff's termination from the TVDP program and the filing of his

grievance. Defendant Swanson submits that she did not wrongly determine that Plaintiff had missed twelve days of community service work, but merely monitored Plaintiff's progress throughout the TVDP program. (Swanson Aff. ¶ 3.) In support of this position, Defendant Swanson introduced significant evidence that job supervisors, not IPPOs, are responsible for keeping inmate attendance and scheduling make-up work days. (Swanson Aff. ¶ 32; Docket Entry No. 120-9, TDOC Policy No. 504.04(VI)(C)(4); Docket Entry No. 120-5, TDOC Policy No. 513.03(VI)(C)(3); Docket Entry No. 120-6, TCIX Policy No. 513.03-1(VI)(C)(5)).) Plaintiff has introduced no evidence that Defendant Swanson was responsible for his termination from the TVDP program, including the statements contained in Mr. Abdul al-Muhaymin's affidavit.

Defendant Swanson also states that she had no knowledge of Plaintiff's grievance as inmate grievances are processed through the Department of Correction. (Swanson Aff. ¶ 41.) As previously discussed, the only evidence Plaintiff has provided to show that Defendant Swanson was aware of the grievance is: (1) minutes of the grievance hearing, chaired by Corporal Darrell Murphy, who is also a member of the M-Team and weekly participant in M-Team meetings; (2) pages of the TCOM handbook which state that "everyone reports on your behavior;" and (3) minutes of the November 24, 2009, meeting of the M-Team. (Pl.'s Resp. at 1.) However, the mere fact that Defendant Swanson and Corporal Murphy were both M-Team members is insufficient to allow the reasonable inference that Defendant Swanson was notified of, and motivated to take adverse action against Plaintiff by, the fact of Plaintiff's protected grievance filing.

In summary, Plaintiff has not set forth any facts to show that there is a genuine issue of material fact for trial on his retaliation claim. Plaintiff, as the non-movant, has not established that Defendant Swanson knew of Plaintiff's grievance, and, even if the court draws the inference

that Defendant Swanson knew of the grievance by virtue of her participation in M-Team meetings with Corporal Murphy, and that the temporal proximity between the grievance and the adverse action suggests retaliatory animus, Plaintiff has not established by competent proof on this summary judgment record that the adverse action taken against him was a result of Defendant Swanson's actions, nor that there were other indicia of retaliatory motive on the part of Defendant Swanson so as to create a triable issue as to whether in fact the adverse action was causally connected to the grievance filing. The undersigned Magistrate Judge finds that Defendant Swanson's motion for summary judgment should be granted as to the § 1983 retaliation claim.

Plaintiff's second claim against Defendant Swanson is for racial and religious discrimination in violation of the Fourteenth Amendment. To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995); Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990). The plaintiff must establish discriminatory intent or purpose, McCleskey v. Kemp, 481 U.S. 279, 292 (1987), and that discriminatory purpose must be a motivating factor in the defendant's actions, Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265-66 (1977).

In this case, Plaintiff's claim for racial and religious discrimination against Defendant Swanson cannot withstand a motion for summary judgment because the Plaintiff has not established that Defendant Swanson was the actor responsible for his termination from the TVDP program nor that Defendant Swanson acted with discriminatory intent. As previously discussed, Plaintiff has offered no evidence in support of his allegation that Defendant Swanson

23

made the decisions to terminate Plaintiff from the TVDP program and to not allow Plaintiff to make up missed work days. Furthermore, Plaintiff's only support for showing a discriminatory motive by Defendant Swanson is Mr. Abdul al-Muhaymin's conclusory statement that "I am aware of Espey attending Jumah Prayer Services every Friday and being penalized for having his time in prison extended for doing so, while non-Muslims were not penalized in any manner for attending their Worship services." (Abdul al-Muhaymin Aff. ¶ 21.) While there is a genuine issue of fact as to whether Defendant Swanson knew that Plaintiff is Muslim based on Plaintiff's and Mr. Abdul al-Muhaymin's affidavits (Docket Entry Nos. 131, 115), that fact is not material because Plaintiff cannot show a discriminatory motive even assuming that Defendant Swanson knew Plaintiff is Muslim and that Defendant Swanson made the adverse decision. In addition, Plaintiff has not provided evidentiary support for his allegation that Defendant Swanson allowed "other white non-Muslim prisoners to make up legitimate days missed working by allowing them to work on weekends in the kitchen or as commercial cleaners." (Compl. ¶¶ 20, 21.) Thus, Defendant Swanson is entitled to summary judgment on Plaintiff's Fourteenth Amendment discrimination claim because Plaintiff has not established that there is a genuine issue of material fact for trial as to whether Defendant Swanson was responsible for the adverse decision, and even assuming responsibility, whether Defendant Swanson acted with discriminatory purpose.

In summary, the undersigned Magistrate Judge finds that there are no genuine issues of material fact for trial, and that, based on the facts before the undersigned, a reasonable jury could not find for the Plaintiff on his claims against Defendant Swanson. The Court should therefore grant Defendant Swanson's motion for summary judgment as to both of the remaining claims against her for retaliation under § 1983 and discrimination in violation of the Fourteenth Amendment.

Plaintiff's remaining claims are against Defendants Westbrooks and Daniel for deliberate indifference in violation of Plaintiff's Eighth Amendment rights. The Eighth Amendment's proscription on cruel and unusual punishment also prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners as an "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference "entails something more than mere negligence;" rather, the prison official must "know of and disregard[] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). Specifically, deliberate indifference "is comprised of both an objective and a subjective component." Cardinal v. Metrish, 564 F.3d 794, 802 (6th Cir. 2009). To fulfill the objective component, a plaintiff must show that the medical deprivation or need is "sufficiently serious." Id. To fulfill the subjective component, a plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety; the official  must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer, 511 U.S. at 837).

In Silas v. McGinnis, 2001 WL 1450717, at *1 (6th Cir. Oct. 31, 2001), a pro se prisoner sued multiple prison officials contending that they were deliberately indifferent to his back condition when they assigned him to work in the prison's food services area despite a 1994 MRI showing some degenerative changes in his lower back. The Silas court determined, however, that the prisoner's treating physician never placed any lifting restrictions on him and, as such, prison officials "had no objective medical evidence that he could not work in the food services area." Id. Moreover, there could be no deliberate indifference because the prisoner was sent for an examination by medical personnel as soon as he began complaining about his inability to work due to his back pain. Id.  Similarly, in Harris v. Westbrooks, 2007 WL 1047594, at *1 (M.D.

Tenn. Apr. 4, 2007), the pro se prisoner plaintiff, a participant in the TVDP program, had a

medical status listed as "Medical Evaluation: Class B Medical, Medications/Restrictions: Three

medications for Hypertension/Lifting 100 lbs maximum-medium work only…" Id. The prisoner

then sued multiple prison officials, including Defendant Daniel, alleging that Defendant Daniel

had assigned him to the community service work detail despite her awareness of his medical

status. Id. The court dismissed the claim against Defendant Daniel because she "assigned the

plaintiff to the community services work detail based on his medical status as it was known to

her." Id. at *3; see also Knight v. Wiseman, 590 F.3d 458, 465 (7th Cir. 2009) (prison officials

were entitled to rely on the absence of work restrictions on prisoner's record and conclude that

he could work without endangering his health).

     In this case, Defendant Daniel should be entitled to summary judgment because Plaintiff

cannot prove that Defendant Daniel knew of and deliberately disregarded an excessive risk to

Plaintiff's health by assigning him to the community service work crew, even assuming that his

risk of injury was "sufficiently serious." Defendant Daniel has established that the sources of

information that she used in making the assignment were the March 19, 2009, Health

Assessment and Health Assessment Comments Detail screens in TOMIS, and Plaintiff's IPP.

(Defs.' Mem. Supp. Mot. at 14; Docket Entry Nos. 119-2, 119-3.) The March 19, 2009, Health

Assessment screen in TOMIS listed Plaintiff as Class B Medical[3], but contained no restrictions.[4]

---

[3]  Pursuant to TDOC policy,

> Class B indicates there is a physical/mental condition which places certain limitations on the
> capabilities of the inmate. The specific limitations must be indicated on CR-1886. The medical
> practitioner shall, whenever possible, use objective observation, medical documentation, and
> diagnostic procedures (when authorized by Utilization Review) to substantiate inmate's self-
> reported medical limitations….

(Docket Entry No. 120-7; TDOC Policy No. 113.21(VI)(A)(1)-(3).)

(Docket Entry No. 119-2.) Plaintiff's IPP listed his Medical Evaluation as Class B Medical, but also contained no medications or restrictions. (Docket Entry No. 119-3.) In fact, Plaintiff signed his IPP which listed that he had no restrictions, stated that his work assignment "depends on what job is open when moved to phase 2," and certified that he would "abide by all…work assignments" and that failure to do so "will subject me to removal from the program." (Docket Entry No. 119-3.) Defendant Daniel was entitled to rely on the absence of restrictions listed even though Plaintiff was designated Class B Medical because such restrictions must be listed pursuant to TDOC policy if the inmate is designated Class B Medical. (Docket Entry No. 120-7; TDOC Policy No. 113.21(VI)(A)(1)-(3)). Furthermore, Plaintiff's IPP lists his work experience as "landscaping" and the job description[5] for the Community Service Worker entails some duties that are consistent with his past work experience in landscaping. (Docket Entry Nos. 119-3, 119-1.)

Plaintiff's complaint can be construed to assert that Defendant Daniel was deliberately indifferent to Plaintiff's medical needs when she did not reassign him to another position following another Health Assessment entered in TOMIS on September 29, 2009. This

---

[4] From the record, it appears that the Health Assessment Screen in TOMIS is based upon form CR-1886, which is also called "Health Classification Summary." Any restrictions listed on the CR-1886 Health Classification Summary are transcribed into TOMIS. For example, Plaintiff's March 19, 2009, Health Classification Summary corresponds with the Health Assessment Summary dated March 19, 2009, in TOMIS and the September 28, 2009, Health Classification Summary corresponds with the September 29, 2009, TOMIS Health Assessment. (Docket Entry Nos. 120-2, 120-4, 119-2.)

[5] Duties of the Community Service Worker include:

 1. Operates various machinery, such as *lawnmower, weedeater, chain saw, etc.*

 3. May perform duties such as *brush clearing, various landscaping duties*; roofing, basic masonry; demolition and construction….

(Docket Entry No. 119-1 (emphasis added).)

assessment listed Plaintiff as "Class B" health classification with restrictions of "no continuous strenuous activity for … longer than 2 hrs—for 2 wks." (Docket Entry Nos. 120-4, 119-2 at 5.) However, Plaintiff has not established that the failure to reassign constituted an "unnecessary and wanton infliction of pain," even assuming the "substantially serious" nature of Plaintiff's risk of injury. There is no evidence that Plaintiff could not continue his work assignment in light of the results of his September 29, 2009, Health Assessment. There is also no evidence to suggest that Defendant Daniel even knew of the September 29 Health Assessment. Thus, Defendant Daniel was not deliberately indifferent to Plaintiff's medical needs when she did not reassign him to another position following this additional Health Assessment.

Plaintiff also contends that "his restrictions all were well documented in his medical file" and Defendant Daniel should have been aware of those restrictions. (Compl. at 3.) However, Defendant Daniel has produced evidence that she was not and could not have been aware of those restrictions in his medical file because inmate medical records are confidential with access to such records limited to professional health personnel. (Daniel Aff. ¶ 3; Docket Entry No. 120-7; TDOC Policy No. 113.52(V) and (VI)(B2).) Because Defendant Daniel does not qualify as health personnel, but is rather the inmate jobs coordinator, she did not have access to Plaintiff's medical file and could not have known of any of the purported restrictions in his medical file. (Defs.' Mem. Supp. Mot. at 15.) Plaintiff has not provided any evidence to raise a genuine issue of material fact as to whether Defendant Daniel was deliberately indifferent to his orthopedic condition, and, as such, Defendant Daniel should be entitled to summary judgment.

The remaining claim against Defendant Westbrooks for deliberate indifference also should not survive Defendants' motion for summary judgment. While Defendant Daniel was alleged to have acted with deliberate indifference toward Plaintiff in her assignment of Plaintiff

to the Community Service Work Crew, Defendant Westbrooks is alleged to have acted with deliberate indifference when he "arbitrarily and capriciously noted in responding to plaintiff's grievance that he had no restrictions, had recovered from gunshot wound, and the decision was based upon Dr. McGhee's physical exam." (Compl. ¶ 14.) In response to Plaintiff's first set of interrogatories and request for production of documents, Defendant Westbrooks provided evidence to support his response that Dr. McGhee advised that Plaintiff had fully recovered from the gunshot wound to his left knee. (Docket Entry No. 114-2, at ¶ 16.) Defendant Westbrooks asserts that his response was not his own "arbitrary and capricious" interpretation of Plaintiff's medical status, but was based upon Plaintiff's Health Classification Summary prepared by Dr. McGhee on March 19, 2009, and a conversation between Defendant Westbrooks and Dr. McGhee in which Defendant Westbrooks sought clarification of Plaintiff's restrictions. (Westbrooks Aff. ¶ 12, Docket Entry No. 120-2.) Plaintiff's only offered evidence to refute Defendant Westbrooks' evidence is the conclusory statement of Mr. Abdul al-Muhaymin that "Mr. Espey filed an inmate grievance #1500, that Westbrooks agreed to the proposed committee response and forwarded to the Inmate Grievance Committee [with comments that] Dr. McGhee was alleged to have stated, [but] Dr. [McGhee] has made no statement concerning this matter." (Abdul al-Muhaymin Aff. ¶ 8.) Thus, Plaintiff has not established that there is a genuine issue of material fact for trial regarding whether Defendant Westbrooks knew of and disregarded a substantial risk of serious harm to Plaintiff. Defendant Westbrooks was entitled to rely on Dr. McGhee's medical evaluation in responding in agreement with the grievance committee.

In summary, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment should be granted. Defendant Swanson is entitled to summary judgment because Plaintiff has not established that she was responsible for Plaintiff's termination from the

TVDP program, that she had knowledge of Plaintiff's grievance, nor that she had a retaliatory or discriminatory purpose, assuming she was responsible for Plaintiff's termination from the TVDP program. Defendant Daniel is entitled to summary judgment because Plaintiff has not established that she was deliberately indifferent to Plaintiff's orthopedic condition by assigning him to a position based upon the absence of medical restrictions in the resources available to her. Defendant Westbrooks is entitled to summary judgment because Plaintiff has not established that he was deliberately indifferent to Plaintiff's medical needs by responding to Plaintiff's grievance based upon the medical evaluation of and conversation with Plaintiff's treating physician, upon whose expertise he was entitled to rely.

## RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for contempt be **DENIED**, Defendant Tolley's motion for summary judgment be **GRANTED**, Plaintiff's motion for summary judgment be **DENIED**, and Defendants Daniel, Westbrooks, and Swanson's motion for summary judgment be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

**ENTERED** this 23rd day of June, 2011.

   s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge
